Thompson v. Parker et al.

---

No. 9179.

THOMPSON v. PARKER ET AL.

JUDGMENT.—Revivor.—Lien.—Proceedings to revive a judgment against the heirs of a judgment defendant, so as to have execution against lands inherited by them, must be brought in the court where the judgment was rendered, and an independent suit therefor in another county, where a transcript had been filed, to obtain a lien, can not be maintained, where the lands have, without fraud, passed to a purchaser.

FRAUDULENT CONVEYANCE.— Trust.— Voluntary Assignment.— Preferring Creditors.—A conveyance to another, by an insolvent debtor, of all his property, in trust, to pay certain creditors, to the exclusion of others, and return the balance of the proceeds to the debtor, is fraudulent and void as to the creditors excluded, by reason of the statute concerning voluntary assignments. R. S. 1881, sections 2662, 2683.

STATUTE OF LIMITATIONS.—*Pleading.—Demurrer.*—A demurrer raises no question under the statute of limitations, where the pleading demurred to does not show affirmatively that the case is not within any of the exceptions to the statute.

ACCEPTANCE.—*Contract for Benefit of Stranger.—Pleading.—Vendor and Purchaser.*—A purchaser of real estate agreed in writing with his vendor, as part of the consideration, to pay a certain judgment against the vendor, which was afterwards assigned to the plaintiff. The complaint upon this agreement did not show that either the plaintiff or his assignor had accepted or consented to this agreement, or become a party to it, or that the plaintiff had any interest in it.

*Held*, that the complaint was bad on demurrer.

SAME.—*Rescission.*—A contract containing a promise for the benefit of a stranger to the contract, may be rescinded by the parties thereto, at any time before the stranger accepts it or consents to it.

From the Hamilton Circuit Court.

*F. M. Trissal*, for appellant.

*D. Waugh* and *J. P. Kemp*, for appellees.

MORRIS, C.—This suit was commenced in Tipton county, and taken by change of venue to Hamilton county. The complaint contains seven paragraphs.

The material facts stated in the first paragraph are, that, on the 17th day of February, 1868, the appellant's assignors, Aaron P. Thompson, Samuel S. Thompson and James R. Thompson, recovered in the court of common pleas of Howard county, a judgment for $268.73 and costs, against Isaac Parker, David Parker and Cornelius Barlow, and that they, on the 19th day of February, 1868, caused a duly certified transcript of said judgment to be filed in the office of the clerk of the court of common pleas of Tipton county, which was duly recorded in the order book of said court; that said judgment defendants were not, at the time of the rendition of the judgment, residents of Howard county, but that Barlow was then and is still a resident of Tipton county; that said Isaac Parker died intestate in said Tipton county, on the 13th day of February, 1874, insolvent and worthless; that no letters of administration have issued on his estate; that Clara W. Parker

is the widow, and David H. Parker, Noah W. Parker, James J. Parker, Josephine Parker, Jennie Martindale and Lavicie Nance are the only heirs, of said Isaac; that, prior to the death of said Isaac, execution had been duly issued on said judgment to the sheriff of Tipton county, and returned wholly unsatisfied.

It is averred that, on the 16th day of December, 1867, the said Isaac Parker and David H. Parker, judgment defendants, were the owners of lot 2, in block 10, of the town of Tipton; also lot 11, in block 7, of said town; that, prior to the 16th day of December, 1867, the said Isaac and David H. Parker had executed a mortgage on said lots to the defendant David Kemp, who held the same at the date aforesaid, and on that day accepted from the mortgagors warranty deeds conveying the fee of said lots to him; that the title so acquired was held by said Kemp until the 17th day of January, 1868, when he reconveyed the same back to said Parkers, his grantors, who, on the 10th day of March, 1869, again conveyed said lots to said Kemp, who still holds the title to said lot 2, and a portion of lot 11; that the defendants Newcomers claim to own a portion of said lot 2; that the defendants Craighead and Fulckerson claim to be the owners of a portion of said lot 2.

The prayer is, that the court declare said judgment a lien on said real estate; that said lien attached thereto on the 19th day of February, 1868, and has subsisted continuously ever since; that the clerk of said court be directed to issue execution on said judgment, commanding the sheriff of said county to sell said real estate for the payment of said judgment, and for other proper relief.

The second paragraph of the complaint is the same as the first, except that it describes a judgment recovered by the same parties, against the same parties except Barlow, for $520.55 and costs. Otherwise, the allegations of the two paragraphs are the same.

The third paragraph of the complaint sets out the recovery of the judgments mentioned in the first and second paragraphs

of the complaint, and the filing and recording of duly certified transcripts of the same, as stated in said first and second paragraphs.   It is also alleged that, on the 17th day of December, 1867, said Isaac and David H. Parker, being wholly insolvent and unable to pay their debts, and having no property other than that hereinafter mentioned, "entered into a corrupt and fraudulent collusion with the defendant David Kemp, in pursuance of which the deed of conveyance, a copy of which is filed with, and as a part of, this paragraph, was, on the 10th day of March, 1869, executed for the purpose of cheating, delaying and defrauding the plaintiff's assignors out of the collection of their claims, and that, at the time of entering into said collusion, and afterwards, did also conspire, contrive and confederate with said Kemp to keep the collusion and fraud aforesaid from being discovered by the plaintiff or his assignors; that the collusion aforesaid was planned, the fraudulent agreement executed as aforesaid, and the facts constituting such collusion and fraud concealed in the manner following, viz.: On said 17th day of December, 1867, said Parkers made conveyances of the same real estate described in said fraudulent deed of March 10th, 1869, to said Kemp, which conveyances were absolute in form, but in fact were made upon the consideration, and with a secret understanding and agreement, that said Kemp was to sell the real estate, and, out of the proceeds, pay the debts owing by said Parkers, except the debt of the plaintiff and his assignors, and an indebtedness of $2,000 to one Frederick Bissell, and, after paying such debts, the overplus, if any, was to be paid to the Parkers; that, after the making of said secret agreement and said conveyance, viz., on the 17th day of January, 1868, after the deeds of December 17th, 1867, had been recorded, said Kemp, without any consideration whatever, reconveyed said real estate to said Parkers, who withheld said conveyance from record until October 2d, 1868; that, on the 10th day of March, 1869, said Parkers, without any new or different consideration than that for which said conveyances of December 17th, 1867, were

made, again conveyed all of said real estate to said Kemp, who has since sold and conveyed to innocent purchasers all of said real estate, except the portions thereof described in exhibit No. 1, filed herewith, to which he still holds title; that from the portion so sold he has realized $20,000."

It is also averred that, among other acts of concealment, the Parkers kept said agreement of December 16th, 1867, though in writing, a profound secret, never placed it upon record nor referred to it in said deeds; that said deeds, absolute in form and reciting considerations, were placed upon record to induce the belief that they were what they purported to be upon their face; that some of the creditors of the Parkers, not including the plaintiff or his assignors, about a month after the making of said deeds, met and threatened to institute proceedings in bankruptcy against said Parkers unless said property should be reconveyed to them, the creditors making such threats knowing the terms of the agreement between the Parkers and Kemp; that Kemp at first refused to reconvey to the Parkers, but finally did so by his deed of January 16th, 1868, which was withheld from record at his request.

It is also alleged that at the time of the execution of the deed of January 16th, 1868, another secret agreement in writing was entered into by said parties, which was left in the hands of said Kemp, and kept secret until after this suit was commenced by filing the original complaint, when, for the first time said Kemp gave out in speeches that he held it as an agreement rescinding said agreement of December, 1867. It is also alleged that it was the intention of the parties that said agreement of rescission should have no effect, and that it was not intended that said conveyance of January 16th, 1868, should have any force. The appellant also avers that he did not discover the fraud until July, 1879; that he was prevented from making such discovery by reason of said reconveyance to the Parkers, and by placing the deeds that were absolute in form on record, and the concealment of the agree-

ment explaining their true character. He also avers that executions have been issued on his judgments and returned wholly unsatisfied; that Cornelius Barlow is, and at all times since said judgments were obtained has been, insolvent and worthless.

The prayer is, that the court will find and adjudge that there is due the appellant $1,800, and declare said land subject to its payment; that said sum be declared a lien on said land still held by Kemp; that Kemp may be adjudged personally liable to the plaintiff for the sum found due him; that said deed of March 10th, 1869, be declared fraudulent and void as to the plaintiff; that said agreement of rescission be declared void, and for general relief.

The fourth paragraph, which is filed on behalf of the appellant and all the other creditors of the firm of Parker & Sons, who may choose to become parties, states that on the 16th day of December, 1867, and for a long time prior thereto, Isaac Parker, then in life but since deceased, and the defendants David H. Parker and Noah W. Parker, were engaged in business at the town of Tipton, Indiana, as merchants and grain dealers under the name and style of "Parker & Sons;" that said firm and the individual members thereof, at the time aforesaid, owned real estate, notes, accounts, choses in action and personal property worth $50,000; owed debts amounting to $20,000, including $800 owing to the assignors of the plaintiff; that the $20,000 included the debts of the firm and its members; that said firm became embarrassed, and on the 17th day of December, 1867, for the purpose of placing the management of their business in the hands of the defendant Kemp, conveyed and transferred all their firm and individual property to him, upon the agreement on his part that he would collect the debts and convert the real and personal property so conveyed and transferred to him into money, and apply the proceeds to the payment of the debts of said firm and of the members thereof, retain a reasonable compensation for his services and pay to said Parkers the surplus, if any;

that the deeds conveying said real estate to said Kemp were absolute on their face, yet they were made and said personal property delivered upon the consideration alone, set forth in a writing executed by said Kemp, " that he was to collect said notes and accounts, sell and dispose of said real and personal property, and with the proceeds pay all the debts of Parker & Sons, and, after reasonably remunerating himself for his services, pay the surplus to said Parkers;" that said writing has been in the possession of said Kemp, so that a copy can not be set forth.

It is stated that, at said time, said Isaac and David H. Parker were indebted to Aaron P. Thompson, Samuel S. Thompson and James R. Thompson; that afterwards judgments were obtained on this indebtedness as stated in the other paragraphs of the complaint; that these judgments had been assigned to the appellant; that they remain in full force and unpaid.

It is alleged that Kemp accepted the trust, took possession and control of the trust property, collected the notes and accounts transferred to him, sold and received payment for the personal property, and sold and conveyed all of said real estate, except portions thereof described in an exhibit filed with the complaint; that the appellant does not know, but is informed and believes, that the amount of trust funds received by said Kemp is $20,000; that the property undisposed of amounts to $10,000, and that said Kemp has received from rents, interest and income of the trust property, $10,000; that he has neglected and refused to pay said creditors, though requested to do so; that, just before the commencement of this suit, said Kemp renounced said trust and pretended and claimed to be the owner of all of said trust property; that this claim is based upon a pretended agreement between him and said Parkers, made after he had accepted said trust and received said property; that, under said agreement, he had the right to, and did, acquire title to said trust property, through judicial sales thereof made to him after the trust was

created, upon judgments and mortgages that were prior liens upon said property, some of which were held by himself; that plaintiff alleges that such sales, if made, were made upon judgments and mortgages that had been previously paid; that, by the terms of the agreement creating said trust, said Kemp was to buy in a portion of said real estate at judicial sale, for the purpose of perfecting the title thereto; that he made such purchase with trust money.

The prayer is that, as such trustee, Kemp be required to account for the trust funds and property; that he may be adjudged liable to the plaintiff for debt, and for other general relief.

The fifth and sixth paragraphs are similar to the third and fourth paragraphs. They embrace the substance of the third and portions of the fourth paragraphs.

The seventh paragraph states the recovery of the judgments in favor of the appellant's assignors, as stated in the first and second paragraphs; their assignment to the plaintiff; that they are unpaid and in full force; that said judgments were entered upon claims which existed on the 16th day of December, 1867; that, on that day, Isaac, David H. and Noah W. Parker sold and conveyed to Kemp certain real estate in Tipton county, which is described, in consideration of which, and as part of the purchase-money, the said Kemp assumed by an instrument in writing, then signed by him, but which has since been lost, so that a copy can not be filed, the payment of the indebtedness due the plaintiff's assignors; that the same is unpaid. Wherefore the plaintiff demands judgment for $1,800.

The appellee Kemp filed a demurrer to the complaint, alleging as causes of demurrer, 1st, that it does not state facts sufficient to constitute a cause of action against him; 2d, that several causes of action have been improperly united in said complaint. He also demurred to each paragraph of the complaint separately, on the ground that neither contains facts sufficient to constitute a cause of action.

The court sustained the separate demurrers to the first, second, third and seventh paragraphs of the complaint, and overruled it as to the fourth, fifth and sixth paragraphs. The court must have overruled the demurrer to the whole complaint, though upon this the record is silent, else it could not have passed, as it did, upon the separate demurrers to each.

The appellee Kemp answered the fourth, fifth and sixth paragraphs of the complaint in nine paragraphs. The appellant demurred to the second, third, fourth, fifth, sixth, seventh, eighth and ninth paragraphs of the answer. The court sustained the demurrer to the second, third, fourth, fifth, seventh, eighth and ninth paragraphs, and overruled it to the sixth.

The plaintiff replied to the sixth paragraph. The appellee Kemp demurred to the second paragraph of the reply, which was sustained. The demurrer is not in the record. The appellee obtained leave to file an amended fifth paragraph of answer. This he seems not to have done; there is a paper copied into the record, purporting to be an amended third and fourth paragraph of the answer, but it is not noticed by the court below.

The Newcomers and Fulckerson answered the complaint, alleging that they were innocent purchasers of part of the real estate described in the complaint. The other defendants below disclaimed any interest in the subject of the suit.

The cause was submitted to a jury, who returned a verdict for the appellees. The appellant moved for a new trial, which motion was overruled.

The errors assigned question the rulings of the court upon the demurrers to the first, second, third and seventh paragraphs of the complaint, and to the sixth paragraph of the answer, and upon the motion for a new trial.

We think the court did not err in sustaining the demurrer to the first and second paragraphs of the complaint. It appears that the judgments mentioned were rendered, one on the 17th and the other on the 19th of February, 1868, and transcripts of them were filed and recorded in the order book

of the court of common pleas of Tipton county, on the 19th day of the same month. This suit appears to have been commenced on the 22d day of October, 1879. The lien of the judgments on the land of the judgment debtors expired, therefore, before the commencement of this suit, unless the appellant was prevented from proceeding upon his judgments by some of the causes mentioned in section 527 of the code of 1852. If the liens of the judgments had ceased, they could not be enforced against land owned by the judgment debtors at the time of their rendition, but sold and conveyed by them to a purchaser in good faith, either during the existence or after the expiration of the liens. It is stated in these paragraphs, that Isaac Parker, one of the judgment debtors, died on the 13th day of February, 1874; that he had no estate, and that no administrator on his estate had been appointed. It is claimed that the death of Isaac Parker prevented the appellant from taking out execution on these judgments, and that it had, therefore, the effect to continue the liens of the judgments and to restrain the appellant from proceeding upon them until revived against the heirs of Isaac Parker. In this, we think the appellant may be right. Execution could not issue against the survivors alone, nor against the survivors and the heirs of Isaac Parker. They were entitled to a hearing; to an opportunity to make defence. In the case of *Erwin's Lessees* v. *Dunda,* 4 Howard, 58, the court say: "It will be seen, therefore, upon these authorities, that the same objections exist, both in principle and in reason, as it respects the enforcement of a judgment against two by a sale of the real estate on execution after the death of one, which have been shown to exist against the enforcement of a judgment against a single defendant after his death." *Davis* v. *Helm,* 3 Sm. & M. 17; *Day* v. *Rice,* 19 Wend. 644; Herman Ex., section 84; *Whitehead* v. *Cummins,* 2 Ind. 58.

Assuming that, under the statute, the death of Isaac Parker had the effect to continue the liens of the appellant's judgments until the commencement of this suit, which we

need not and do not decide, he should have revived the judgments against the heirs and devisees of Isaac Parker, and taken out execution upon them. If the liens had ceased the appellant had no claim upon the land conveyed to the appellee Kemp; if the liens continued, there being no fraud charged, his remedy was to revive the judgments and take out execution. The judgments could not be revived by proceedings in the Tipton Circuit Court. Such proceedings should be instituted in the court in which the judgments were rendered.

From the facts stated in the third paragraph of the complaint, the conclusion is inevitable that Kemp took the title to the property of the Parkers as a purchaser, not for his benefit, but in trust to pay, out of its proceeds, some of their creditors, and to return to them the surplus, if any. It is not stated in this paragraph that the Parkers were indebted to Kemp, and the only consideration for the transfer of the property was his agreement to pay some of their creditors to the exclusion of others, and to return to them, after remunerating himself for his trouble, the surplus. Upon the facts, he can not be regarded as a purchaser in his own right. Equity will, under the circumstances, hold him to be a trustee merely, holding for the benefit of the creditors named in the agreement as the parties to be paid. *Gaylord* v. *Cramer*, 1 Handy, 369. But the purpose being to prefer, by this voluntary assignment, a portion of the assignors' creditors to the exclusion of others, the transaction, under the act of 1859, in relation to voluntary assignments, must be held to be fraudulent and void. 1 R. S. 1876, p. 142. Though the facts are somewhat confused in this paragraph of the complaint, and stated without much regard to their logical dependence, we think, as stated, they constitute a good cause of action, and that the delay in instituting the suit is, under the circumstances, excusable. It is said, however, that, admitting this, it appears upon the face of the pleading that the cause of action is barred by the statute of limitations. In this counsel are mistaken. It does not appear, even inferentially, but that

some of the parties at least were, and still are, under disabilities, and within the exception to the statute. For this reason the question did not arise upon the demurrer. *Kent* v. *Parks,* 67 Ind. 53; *Potter* v. *Smith,* 36 Ind. 231. The demurrer should have been overruled.

The demurrer to the seventh paragraph was properly sustained. It is not averred in this paragraph that the appellant ever accepted, or in any way became a party to the agreement of Kemp to pay the indebtedness due to his assignors, or that they had accepted or consented to it, nor that he ever had any interest in the undertaking, made long before he became the owner of said judgments. *Talburt* v. *Berkshire Ins. Co.,* 80 Ind. 434, and cases there cited.

A demurrer to the third paragraph of the answer to the fourth paragraph of the complaint was overruled by the court. Of this the appellant complains. This paragraph of the answer, which is called the sixth in the record, states that the appellee purchased the property described in the fourth paragraph of the complaint, upon the agreement to pay the debts of the Parkers, including his own claim against them, and also the appellant's judgments; that the deed of the 16th of December, 1867, was made upon, and pursuant to, this agreement. But the answer further avers, that soon thereafter, and before the appellee had taken possession of the property, and before the creditors of the Parkers had accepted or consented to said arrangement, he learned that the property was of much less value than the Parkers had represented it to be, and entirely insufficient to pay said debts, and that thereupon he and the Parkers rescinded said agreement, and he reconveyed to them said property. The appellant insists that, upon the facts stated, it was not competent for Kemp and the Parkers to rescind this contract; that, though the creditors had not consented, or in any way become parties, to the contract, yet the parties to it could not rescind it without their consent. Upon the facts stated, no interest in the contract to pay them had vested in the creditors. The rescission did not

and could not injure them.    It is settled in this State, that where a promise is made by one of two or more contracting parties for the benefit of a third person, the parties to the contract may, before such third party accepts it or consents to it, rescind the contract. *Trimble* v. *Strother*, 25 Ohio St. 378 ; *Kelly* v. *Roberts*, 40 N. Y. 432; *Durham* v. *Bischof*, 47 Ind. 211; *Davis* v. *Calloway*, 30 Ind. 112.

There was no error in overruling the demurrer to this paragraph of the answer.

As the case must be reversed because of the error committed in sustaining the demurrer to the third paragraph of the complaint, it is unnecessary to consider the rulings of the court upon the motion for a new trial.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the costs of the appellees.